1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    ANDREY YUSHCHUK,                          No.  2:20-cv-2137 KJM AC P

12                      Petitioner,

13            v.                                 FINDINGS AND RECOMMENDATIONS

14    ROBERT NEUSCHMID,

15                      Respondent.

16

17          Petitioner is a state prisoner proceeding pro se on a petition for a writ of habeas corpus

18    pursuant to 28 U.S.C. § 2254.  The action proceeds on a petition challenging petitioner's 2016

19    conviction for second degree murder.  ECF No. 1.  Respondent has answered.  ECF No. 16.

20    Petitioner did not file a traverse.

21                                    BACKGROUND

22    I.       Proceedings in the Trial Court

23            A.  Preliminary Proceedings

24          The charges arose from a fatal car crash in Placer County in 2012.  Petitioner was charged

25    with several counts related to driving under the influence of alcohol, and with second degree

26    "Watson murder."  See People v. Watson, 30 Cal.3d 290 (1981) (implied malice supports second

27    degree murder liability when defendant does an act with a high probability it will result in death

28    and with conscious disregard for life).

                                            1

B. The Evidence Presented at Trial

    1. Prosecution Case[1]

While driving in the early morning of November 14, 2012, petitioner crossed over the centerline of the road and caused a collision that killed Gabriel Rodriquez. A vehicle driven by Michael S. then hit Rodriguez's vehicle. A vodka bottle missing 10 ounces was in petitioner's vehicle and he smelled of alcohol. Petitioner was trapped and had to be cut out of his vehicle.

Petitioner had five prior convictions for drunk driving behavior between 1993 and 1996: four DUIs or DUI with priors, and one "wet reckless" (reckless driving in lieu of DUI). The parties stipulated that two peace officers would testify about two arrests leading to DUI charges in which petitioner was involved in traffic collisions, once with a fence. When petitioner renewed his driver's license in 2010, he would have received the standard "Watson admonition" required by California statute, which states in part that "it is extremely dangerous to human life to drive while under the influence of alcohol or drugs or both. If you continue to drive while under the influence of alcohol or drugs, or both and, as a result of that driving someone is killed, you can be charged with murder." Petitioner took an online traffic-school course in July 2009 that included a Watson admonition. A former manager for a drunk driving agency testified that a person who completed an 18-hour court-ordered DUI program—as petitioner did in 1998—would learn that drunk driving was dangerous to human life.

Nikolay Gritsyuk testified he was petitioner's close friend and business partner; he and petitioner ran a janitorial business. After work the night before the collision he and petitioner drank in a bar, then went to a liquor store where petitioner bought vodka. They drank coffee and waited in a parking lot so Gritsyuk could sober up and would not smell of alcohol when he returned home, but both were intoxicated. They had discussed the dangers of drunk driving in the past. Gritsyuk asked petitioner if he was "okay to drive" and petitioner said he was.

In a prior statement to peace officers, Gritsyuk had said the pair decided not to drive after leaving the bar around midnight, that petitioner had probably had beer and a shot or two, then

---

[1] This factual summary is adapted from the opinion of the California Court of Appeal, ECF No. 15-14.

2

they left and had food and coffee.  At around 5:00 or 6:00 a.m. they left a 7-Eleven.  In response to Gritsyuk's questioning, petitioner had told Gritsyuk that he was "okay."

A criminalist testified that petitioner's blood sample, taken about two hours after the Collision, tested at 0.14 percent.  Most people "peak" within five to 15 minutes.  Hypothetically, a 230-pound male who "guzzles" 10 ounces of 80-proof vodka would have a blood-alcohol level of 0.132 percent; a 240-pound male's level would be 0.126 percent.  If that male had no alcohol in his system at 5:15 a.m. and drank 10 ounces of the vodka, by 6:15 a.m. he would have a level of about 0.108 percent; adding an extra half hour to the interval would give a level of about 0.099 percent.  Had he not had any alcohol for the prior two hours before the sample, his level would be 0.18 percent.  If the male had some alcohol in his system at the time of the collision—but less than 0.08 percent—and then drank the vodka before the accident, a reading of 0.14 percent (or 0.145 percent, one of the non-rounded readings) could be achieved two hours later.

2.  Defense Case

A retired CHP officer prepared a video recording of the roadway that approximated the lighting conditions at the time of the collision.  He testified that crossing over the centerline is not sufficient by itself to support arrest for DUI.  Circumstances other than intoxication can cause a driver to cross over a centerline, including roadway features such as curves.  On cross-examination the witness testified that the speed limit signs and yellow lines on the road were clearly visible.

Petitioner's toxicologist retested petitioner's blood sample and derived a blood alcohol figure of 0.12 percent, which was consistent with the original 0.14 percent reading because he tested the sample long after the collision and alcohol decreases in samples over time.  It was possible, depending on when a hypothetical person drank 10 ounces of vodka, for the blood alcohol to have been rising after the hypothetical collision.  Some permutations would involve having an alcohol level below 0.08 percent (the presumptive legal limit) at the time of the collision.

Petitioner testified and admitted five alcohol-related convictions, a DUI in 1993, a DUI in 1994 (with an accident), a wet reckless in 1995, and two felony DUIs in 1996.  His testimony

3

suggested he could not understand the DUI classes he had taken because he was not then fluent in English.  He testified that had no memory of the events in question because of his injuries.  He had told an insurance agent that he thought he and Gritsyuk drank vodka before they walked around to "wear off the effect," then he drove Gritsyuk home, but he testified that he had been guessing based on information the insurance agent gave him.  When he renewed his license in 2010 he had not read all the papers.  He completed an online traffic school in 2009 because of a speeding ticket, but did not remember reading all the required material.

### C.  Outcome

The jury found petitioner guilty of implied-malice second degree murder,  misdemeanor drunk driving and misdemeanor aggravated drunk driving.  Petitioner was acquitted of felony DUI with injury.

The trial court sentenced petitioner to prison for a term of 15 years to life.

## II.    Post-Conviction Proceedings

Petitioner timely appealed, and the California Court of Appeal affirmed the judgment of conviction on October 12, 2018.  ECF No. 15-14.  The California Supreme Court denied review on January 23, 2019.  ECF No. 15-15.

Petitioner filed a petition for writ of habeas corpus in the Superior Court of Placer County, presenting a single claim of ineffective assistance of counsel, which was denied in a written decision on February 3, 2020.  EC F No. 15-16.  Petitioner then filed a 7-claim habeas petition in the California Supreme Court, which was denied without comment or citation.  ECF No. 15-17.

## STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable

1
2
determination of the facts in light of the evidence presented in the State court proceeding.

3   The statute applies whenever the state court has denied a federal claim on its merits,

4   whether or not the state court explained its reasons.  Harrington v. Richter, 562 U.S. 86, 99

5   (2011).  State court rejection of a federal claim will be presumed to have been on the merits

6   absent any indication or state-law procedural principles to the contrary.  Id. (citing Harris v. Reed,

7   489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a

8   decision appearing to rest on federal grounds was decided on another basis)).  "The presumption

9   may be overcome when there is reason to think some other explanation for the state court's

10  decision is more likely."  Id. at 99-100.

11  The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal

12  principle or principles" previously articulated by the Supreme Court.  Lockyer v. Andrade, 538

13  U.S. 63, 71-72 (2003).  Only Supreme Court precedent may constitute "clearly established

14  Federal law," but courts may look to circuit law "to ascertain whether…the particular point in

15  issue is clearly established by Supreme Court precedent."  Marshall v. Rodgers, 569 U.S. 58, 64

16  (2013).

17  A state court decision is "contrary to" clearly established federal law if the decision

18  "contradicts the governing law set forth in [the Supreme Court's] cases."  Williams v. Taylor, 529

19  U.S. 362, 405 (2000).  A state court decision "unreasonably applies" federal law "if the state

20  court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to

21  the facts of the particular state prisoner's case."  Id. at 407-08.  It is not enough that the state court

22  was incorrect in the view of the federal habeas court; the state court decision must be objectively

23  unreasonable.  Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).

24  Review under § 2254(d) is limited to the record that was before the state court.  Cullen v.

25  Pinholster, 563 U.S. 170, 180-181 (2011).  The question at this stage is whether the state court

26  reasonably applied clearly established federal law to the facts before it.  Id. at 181-182.  In other

27  words, the focus of the § 2254(d) inquiry is "on what a state court knew and did."  Id. at 182.

28  Where the state court's adjudication is set forth in a reasoned opinion, §2254(d)(1) review is

confined to "the state court's actual reasoning" and "actual analysis."  Frantz v. Hazey, 533 F.3d 724, 738 (9th Cir. 2008) (en banc).  A different rule applies where the state court rejects claims summarily, without a reasoned opinion.  In Richter, supra, the Supreme Court held that when a state court denies a claim on the merits but without a reasoned opinion, the federal habeas court must determine what arguments or theories may have supported the state court's decision, and subject those arguments or theories to § 2254(d) scrutiny.  Richter, 562 U.S. at 102.

DISCUSSION

I.      Claims One and Two: Insufficient Evidence in Violation of Due Process

      A.      Petitioner's Allegations and Pertinent State Court Record

In Claim One, petitioner alleges that no evidence was adduced at trial to support two essential elements of implied malice murder in the vehicular homicide context: (1) a specific act of highly reckless driving that creates a high probability of death, and (2) actual subjective awareness of the deadly risk being created.  ECF No. 1 at 20.  Petitioner alleges that conviction upon insufficient evidence violates his constitutional rights.  Id.  The issue of implied malice murder under California law is briefed at length.  Id. at 20-64.

In Claim Two, petitioner alleges that his rights were violated by the trial court's denial of his motion for acquittal on grounds of insufficient evidence, and the appellate court's affirmance on that issue.  Petitioner describes the Court of Appeal's decision as "an unreasonable determination of facts" in that the court "argued a felony-murder theory of liability to improperly impute malice from an underling act of DUI that lacked evidence of implied malice."  ECF No. 1 at 64.  Petitioner acknowledges that this claim is essentially identical to Claim One, and amounts to briefing of his entitlement to relief on the sufficiency of evidence issue under 28 U.S.C. 2254(d).  Id. at 65.

      B.      The Clearly Established Federal Law

Due process requires that each essential element of a criminal offense be proven beyond a reasonable doubt.  United States v. Winship, 397 U.S. 358, 364 (1970).  In reviewing the sufficiency of evidence to support a conviction, the question is "whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential

6

elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1974).  If the evidence supports conflicting inferences, the reviewing court must presume "that the trier of fact resolved any such conflicts in favor of the prosecution," and the court must "defer to that resolution." Id. at 326.  "A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." Cavazos v. Smith, 565 U.S. 1, 2 (2011).  Put differently, a verdict must stand unless it was "so unsupportable as to fall below the threshold of bare rationality." Coleman v. Johnson, 566 U.S. 650, 656 (2012).  In applying these principles, a court looks to state law for the substantive elements of the criminal offense, but the minimum amount of evidence that the Constitution requires to prove the offense "is purely a matter of federal law." Id. at 655.

C.  The State Court's Ruling

With the exception of the federal petition's references to 28 U.S.C. § 2254(d) standards, these claims are substantively identical to Claims One and Two of the state habeas petition that was presented to the California Supreme Court. Compare ECF No. 1 (federal petition) at 20-95 with ECF No. 15-17 (state petition) at 14-88.  The California Supreme Court denied the petition summarily, without comment or citation. Id. at 1.

As Claim Two indicates, the core of Claim One had been presented on direct review as a challenge to the trial court's denial of a motion for acquittal.  The California Court of Appeal ruled as follows:

> *Motion to Acquit*
>
> Defendant first contends the trial court erred in denying his motion to acquit at the close of the People's case-in-chief. We disagree.
>
> The People's theory of second degree murder was based on implied malice principles enunciated by our Supreme Court in *Watson, supra*, 30 Cal.3d 290:
>
> "We have said that second degree murder based on implied malice has been committed when a person does ' " 'an act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life' " . . . .' [Citations.] Phrased in a different way, malice may be implied when defendant does an act with a high probability that it will result in death and does it with a base antisocial motive and with

7

a wanton disregard for human life. [Citation.]" (*Watson, supra*, 30 Cal.3d at p. 300.)

In reviewing whether the evidence at the time of the motion to acquit was sufficient to support a finding of implied malice, we apply the same standard as when reviewing the sufficiency of the evidence to support a conviction, that is, " ' "whether from the evidence, including all reasonable inferences to be drawn therefrom, there is any substantial evidence of the existence of each element of the offense charged." ' [Citation.] 'The purpose . . . is to weed out as soon as possible those few instances in which the prosecution fails to make even a prima facie case.' [Citations.] The question 'is simply whether the prosecution has presented sufficient evidence to present the matter to the jury for its determination.' [Citation.] The sufficiency of the evidence is tested at the point the motion is made. [Citations.] The question is one of law, subject to independent review. [Citation.]" (*People v. Stevens* (2007) 41 Cal.4th 182, 200.)

In turn, the basic substantial evidence test is well settled, requiring that " 'we review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence— that is, evidence that is reasonable, credible, and of solid value— from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " (*People v. Abilez* (2007) 41 Cal.4th 472, 504; *see People v. Raley* (1992) 2 Cal.4th 870, 891 [substantial evidence " ' "reasonably inspires confidence" ' "].)

Defendant's briefing either attacks or tries to weaken the *Watson* murder theory or draws factual inferences in his favor, disregarding the appropriate standard of review. He asserts that: "No evidence exists to support a finding that [the defendant] harbored malice aforethought at the time of the accidental collision of his vehicle . . ." or "from which one could draw reasonable inferences that a high probability of death was occasioned by [the defendant] driving his vehicle on the morning of November 14, 2012, and/or that [the defendant] actually perceived and appreciated any such risk of death."

This claim is partly based on defendant's view that unlike in many reported cases, his driving did not entail multiple instances of poor driving, but merely driving over the centerline; it also partly echoes defendant's motion to dismiss (Pen. Code, § 995) and motion to acquit, which were based on the view that he had to have acted with knowledge that what he was doing posed a high probability of death, not merely danger to human life. He also proposed instructions to that effect. [fn. omitted]

Taking the last point first, it is not necessary to instruct the jury that malice requires knowledge of a "high probability of death" because the equivalent formulation of "conscious disregard for human life" is now recommended. (*See People v. Knoller* (2007) 41 Cal.4th 139, 152; *People v. Dellinger* (1989) 49 Cal.3d 1212, 1221-1222; *see also Watson, supra,* 30 Cal.3d at p. 300.) The question on appeal therefore becomes whether there was substantial evidence of such conscious disregard. There was.

Defendant's contrary claim fails to view the evidence in the light most favorable to the People, which requires drawing all rational inferences in favor of the verdict. Viewed in that light, defendant's prior DUI convictions, the DUI and traffic classes he took, and the admonishments he received when he renewed his driver's license, show he knew of the risk to human life from drunk driving. "The cases have relied upon some or all of the following factors in upholding drunk driving-murder convictions: (1) a blood alcohol level above the .08 percent legal limit; (2) a pre-drinking intent to drive; (3) knowledge of the hazards of driving while intoxicated; and (4) highly dangerous driving." (*People v. Talamantes* (1992) 11 Cal.App.4th 968, 973.) Here although defendant's driving may not have been particularly dangerous, there was ample evidence defendant drove far above the legal limit, that he subjectively knew the risks to human life of drunk driving, and he formed the intention to drive drunk despite those risks. (*See, e.g., People v. Batchelor* (2014) 229 Cal.App.4th 1102, 11153 [inference from DUI classes]; *People v. Olivas* (1985) 172 Cal.App.3d 984, 989 ["case-by-case approach"]; *People v. Brogna* (1988) 202 Cal.App.3d 700, 709 ["One who drives a vehicle while under the influence after having been convicted of that offense knows better than most that his conduct is not only illegal, but entails a substantial risk of harm to himself and others"]; *cf. People v. Contreras* (1994) 26 Cal.App.4th 944, 955 ["the absence of intoxication or high speed flight from pursuing officers does not preclude a finding of malice"].) Accordingly, the trial court did not err in denying the motion to acquit.

ECF No. 15-14 at 6-8.

### D.  Objective Reasonableness Under § 2254(d)

Neither the opinion on appeal nor the summary habeas denial is objectively unreasonable in its application of federal constitutional principles.[2]  Petitioner's argument is predicated almost entirely on a particular interpretation of California law, which is a matter beyond the scope of this court's review.  The state courts have rejected petitioner's theory that malice can be implied in the drunk driving context only if, at the time of the accident, the defendant was driving in a particular way that was substantially likely to cause a fatality and that the defendant was subjectively aware of this likelihood.  This court must accept the state courts' interpretation of the implied malice murder statute and its application in the drunk driving context.  See Bradshaw v. Richey, 546 U.S. 74, 76 (2005) (federal habeas court is bound by state court's interpretation of state law); see also

---

[2]  Contrary to petitioner's characterization of the appellate opinion, there were no factual findings which might be subject to scrutiny under § 2254(d)(2).  The appellate court analyzed the legal sufficiency of the trial evidence and the permissible inferences to be drawn from that evidence, but engaged in no fact-finding.

1   Mulvaney v. Wilbur, 421 U.S. 684, 691 (1975) (state courts are "the ultimate expositors of state

2   law," and federal court is generally bound by the state supreme court's interpretation of state

3   law).  The only question cognizable in federal habeas is whether, given the interpretation of state

4   law set forth in the appellate opinion and the California cases it cites, particularly People v.

5   Knoller, 41 Cal.4th 139 (2007),[3] the evidence at petitioner's trial could rationally support the

6   verdict as required by the Due Process Clause.  And under the federal habeas statute, that

7   question cannot even be reached unless the state court's adjudication of the claim was objectively

8   unreasonable under Jackson v. Virginia.

9        The California Supreme Court could reasonably have rejected petitioner's sufficiency of

10   the evidence challenge in habeas for the same reasons explained by the appellate court on direct

11   review.  See Richter, 562 U.S. at 102 (federal court must determine what rationale "could have

12   supported" an unexplained denial, and relief is unavailable if there is any objectively reasonable

13   basis).[4]  The appellate court, whose opinion on this issue is quoted in full above, correctly

14   articulated the standard required under Jackson.  By identifying the evidence which supported a

15   finding of implied malice, and linking that evidence to the standards established by California

16   law, the appellate court applied Jackson reasonably.

17        Because there was evidence to support an inference that petitioner drove drunk knowing

18   the hazards of doing so, clearly established federal law obligated the state court to defer to the

19   jury's conclusion on implied malice.  See Jackson, 443 U.S. at 326.  That the evidence did not

20   necessarily compel the jury's conclusions does not render them constitutionally infirm.

21   Petitioner's lengthy and detailed arguments about insufficiency either urge a different

22   interpretation of the evidence, which is not permitted under Jackson, or advocate for a reformed

23   interpretation of California implied malice murder in the DUI context, which is not cognizable

24

25   [3]  In Knoller, the California Supreme Court held that implied malice murder does not require
     proof that the defendant understood her conduct created a high probability of someone's death,

26   but is supported by defendant's awareness of engaging in conduct that endangers the life of
     another.  In other words, conviction requires proof that defendant acted with conscious disregard

27   for the danger to human life.  Knoller, 41 Cal.4th at 152, 156.
     [4]  Indeed, the California Supreme Court's earlier denial of the petition for review of the appellate

28   court's opinion indicates its approval.

1  under the basic principles of comity that frame federal habeas review.  See Bradshaw, 546 U.S. at

2  76; Mulvaney, 421 U.S. at 691.

3       In sum, this is far from a case in which "no rational trier of fact could have agreed with

4  the jury."  Cavazos, 565 U.S. at 2.  Particularly in light of the "double dose of deference" to the

5  verdict that is required under the Due Process Clause and the AEDPA, Boyer v. Belleque, 659

6  F.3d 957, 964 (9th Cir. 2011), federal habeas relief is unavailable on this claim.

7      II.    Claim Three: California Penal Code § 191.5(e) is Void for Vagueness

8          A.  Petitioner's Allegations and Pertinent State Court Record

9       Petitioner challenges the constitutionality of Cal. Penal Code § 191.5(e), which expressly

10  permits implied malice murder charges in the DUI context.  ECF No. 1 at 95.

11       Cal. Penal Code § 191.5 codifies the crimes of gross vehicular manslaughter and vehicular

12  manslaughter while intoxicated.  Subsection (e) provides:

13
14      This section shall not be construed as prohibiting or precluding a charge of murder under Section 188 upon facts exhibiting wantonness and a conscious disregard for life to support a finding of implied malice, or upon facts showing malice consistent with the holding of the California Supreme Court in People v. Watson, 30 Cal. 3d 290.

15
16

17  Cal. Penal Code § 191.5(e).

18          B.  The Clearly Established Federal Law

19       "A [substantive criminal] statute can be impermissibly vague ... if it fails to provide

20  people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits"

21  or "if it authorizes or even encourages arbitrary and discriminatory enforcement."  Hill v.

22  Colorado, 530 U.S. 703, 732 (2000).  As for the notice requirement, the Supreme Court "has

23  consistently held that lack of precision is not itself offensive to the requirements of due process."

24  Roth v. United States, 354 U.S. 476, 491 (1957).  "[T]he Constitution does not require impossible

25  standards; all that is required is that the language conveys sufficiently definite warning as to the

26  proscribed conduct when measured by common understanding and practices."  United States v.

27  Petrillo, 332 U.S. 1, 7-8 (1947).  "The root of the vagueness doctrine is a rough idea of fairness.

28  It is not a principle designed to convert into a constitutional dilemma the practical difficulties in

1   drawing criminal statutes both general enough to take into account a variety of human conduct

2   and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited."

3   Colten v. Kentucky, 407 U.S. 104, 110 (1972).

4           C.   The State Court's Ruling

5           The California Supreme Court denied this claim on the merits without comment or

6   citation.

7           D.   Objective Reasonableness Under § 2254(d)

8           Federal habeas relief is not available on this claim, because the U.S. Supreme Court has

9   never found a similar state criminal statute to be void for vagueness.  See Wright v. Van Patten,

10   552 U.S. 120, 125-26 (2008) (per curiam) (if no Supreme Court precedent controls a legal issue

11   raised by a habeas petitioner in state court, the state court's decision cannot be contrary to, or an

12   unreasonable application of, clearly established federal law).  No U.S. Supreme Court precedent

13   has held a statute basing murder liability in the DUI context on implied malice, or a statute

14   establishing the standards articulated by the California Supreme Court in Watson and progeny, to

15   be void for vagueness—or constitutionally impermissible on any other ground, for that matter.

16           Moreover, petitioner cannot plausibly claim that California law (including Penal Code §

17   191.5(e) and the other sections it internally references) failed to put him on notice that it was

18   illegal to drive under the influence or that he could be charged with murder if his drunk driving

19   caused a fatality.  Such lack of notice is the potential constitutional problem that the void-for-

20   vagueness doctrine exists to prevent.  See Hill, 530 U.S. at 732.  Petitioner argues that the statute

21   permits arbitrary enforcement, and he cites allegedly inconsistent state court decisions in the DUI

22   homicide context as evidence of arbitrariness.  While the U.S. Supreme Court has recognized the

23   constitutional wrong caused by criminal statutes so vague that they result in arbitrary and

24   discriminatory enforcement, id., petitioner's argument demonstrates only that different results are

25   obtained on different facts.  That is not unconstitutional.  See Colten, 407 U.S. at 110.

26   ////

27   ////

28   ////

1    III.    Claim Four: Jury Instructions Violated Due Process

2                A.  Petitioner's Allegations and Pertinent State Court Record

3           Petitioner alleges that the instructions given in his case did not require the jury to

4    "properly test for the required evidence."  Specifically, the jury instructions failed to require proof

5    of highly reckless driving and proof that petitioner was subjectively aware of creating a high

6    probability of death.  ECF No. 1 at 104.

7                B.  The Clearly Established Federal Law

8           As a general matter, errors in instructing the jury implicate a defendant's constitutional

9    rights only if they "so infect[] the entire trial that the resulting conviction violates due process."

10   Estelle v. McGuire, 502 U.S. 62, 71 (1991).  Alleged instructional error "must be considered in

11   the context of the instructions as a whole and the trial record."  Id. at 72.  In challenging the

12   failure to give an instruction, a habeas petitioner faces an "especially heavy" burden because

13   "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of

14   the law."  Henderson v. Kibbe, 431 U.S. 145, 155 (1977).

15                C.  The State Court's Ruling

16          The California Supreme Court denied the claim without comment or citation.

17                D.  Objective Unreasonableness Under § 2254(d)

18          This claim essentially reframes petitioner's core objection to DUI murder liability as a

19   jury instruction issue.  As in the previous three claims, petitioner contends that his constitutional

20   rights were violated by California law permitting an implied-malice murder verdict without a

21   heightened showing of life-threatening driving behavior and subjective awareness of imminent

22   threat to life.  For the same reasons previously discussed, petitioner's disagreement with

23   California law does not provide any basis for federal habeas relief.

24          There was nothing objectively unreasonable in the summary denial of this claim.  The jury

25   instructions were correct as a matter of California law.  See Watson, 30 Cal.3d 290; Knoller, 41

26   Cal.4th at 156.  Because there was no instructional error, the predicate for the constitutional claim

27   is missing.  And because the U.S. Supreme Court has never held that a jury in a DUI murder case

28   (or any other implied malice context) must be instructed as petitioner urges, federal habeas relief

1  in unavailable.  See Wright, 552 U.S. at 125-26.

2      IV.    Claim Five: Prosecutorial Suppression of Exculpatory Evidence

3          A.  Petitioner's Allegations and Pertinent State Court Record

4      Petitioner alleges a Brady violation in the prosecution's failure to produce to the defense

5  pretrial a set of scene photographs taken by a private photographer, Paul Saldivar.  ECF No. 1 at

6  123-124, 128.  Petitioner provides the following factual basis for the claim.

7      At trial, CHP Investigator Hamilton testified that he estimated the point of impact between

8  petitioner's vehicle and the victim's vehicle was approximately in the center of the road.  At the

9  preliminary hearing, he had estimated the point of impact as approximately one foot from the

10  roadway's centerline, in the victim's lane of travel.  When cross-examined about this

11  inconsistency, Hamilton testified that he had changed his opinion after examining photographs

12  taken by Paul Saldivar.  Hamilton, however, had been in possession of the photographs since

13  before the preliminary hearing.  Id. at 127-128.  A defense discovery request for the photographs

14  had been rejected by the prosecutor on the grounds that Saldivar retained copyright and had

15  prohibited the making of copies.  The defense could not afford to purchase a set of the

16  photographs from Saldivar.  Id. at 128-129.  The photos were favorable defense evidence because

17  they "provided substantial evidence supporting Petitioner's 'centerline strategy.'"  Id. at 130.

18  Attached to the petition are some of the Saldivar photos, as the appeared in the CHP accident

19  report.  Id. at 169, 189-191.

20          B.  The Clearly Established Federal Law

21      "[T]he suppression by the prosecution of evidence favorable to an accused … violates due

22  process where the evidence is material either to guilt or to punishment, irrespective of the good

23  faith or bad faith of the prosecution."  Brady v. Maryland, 373 U.S. 83, 87 (1963).  The duty to

24  disclose such evidence applies even when there has been no request by the accused, United States

25  v. Agurs, 427 U.S. 97, 107 (1976), and encompasses impeachment evidence as well as

26  exculpatory evidence, United States v. Bagley, 473 U.S. 667, 676 (1985).

27      Evidence is material for Brady purposes if there is "a reasonable probability that, had the

28  evidence been disclosed to the defense, the result of the . . . proceeding would have been

1    different." Cone v. Bell, 556 U.S. 449, 469-70 (2009).  In sum, for a Brady claim to succeed on

2    collateral review, petitioner must show: (1) that the evidence at issue is favorable to the accused,

3    either because it is exculpatory or impeaching; (2) that it was suppressed by the prosecution,

4    either willfully or inadvertently; and (3) that it was material (or, put differently, that prejudice

5    ensued).  Banks v. Dretke, 540 U.S. 668, 691 (2004); Strickler v. Greene, 527 U.S. 263, 281-82

6    (1999).

7           C.  The State Court's Ruling

8           This claim was summarily denied as part of the habeas petition presented to the California

9    Supreme Court.  It had previously been presented to the superior court and was denied in a

10   reasoned decision.  Accordingly, this court "looks through" the silent denial and reviews the

11   superior court decision for reasonableness under § 2254(d).  See Ylst v. Nunnemaker, 501 U.S.

12   797 (1991); Bonner v. Carey, 425 F.3d 1145, 1148 n.13 (9th Cir. 2005).

13          The superior court ruled as follows:

14               With respect to his second basis for relief, which is essentially a
                 discovery issue, petitioner has also failed to establish a prima facie
15               case for relief. First, he failed to raise this issue on appeal. Generally,
                 habeas relief is not appropriate for issues raised on appeal, or which
16               could have been raised on appeal but were not. (*In re Waltreus* (1965)
                 62 Cal.2d 218; *In re Dixon* (1953) 41 Cal.2d 756.) Second, as to the
17               merits, he mischaracterizes what happened a *Brady* violation
                 [citation omitted], in which District Attorney withheld exculpatory
18               information from his trial. The Defense had an opportunity to object
                 and litigate the admissibility of those photos, as well as cross
19               examine the People's witness as to inconsistent opinions.

20   ECF No. 15-16 at 7-8.

21          D.  Objective Reasonableness Under § 2254(d)

22          There is nothing unreasonable about the state court's conclusion that petitioner failed to

23   present a prima facie case under Brady v. Maryland.  To the contrary, consideration of the

24   elements of a Brady claim demonstrates that petitioner's allegations satisfy none of them.

25   Accordingly, the superior court was correct that the issue with the photographs does not come

26   within the scope of Brady.

27          First, the petition does not establish that the Saldivar photos constituted favorable

28   evidence.  Petitioner merely speculates that they would have provided support for the "centerline"

                                                  15

strategy, based on the Hamilton testimony.  Speculation about the evidentiary value of the photographs does not establish that due process required their production.

Second, the petition does not provide facts showing that the evidence was suppressed by the prosecution.  Evidence is "suppressed" within the meaning of Brady when it "is known to the State and not disclosed to the defendant."  Comstock v. Humphries, 786 F.3d 701, 709 (9th Cir. 2015).  Where a "defendant has enough information to be able to ascertain the supposed Brady material on his own, there is no suppression."  United States v. Aichele, 941 F.2d 761, 764 (9th Cir. 1991); see also Cunningham v. Wong, 704 F.3d 1143, 1154 (9th Cir. 2013) (finding that, because defendant's attorneys possessed the "salient facts" to access the alleged Brady evidence, "[t]here was no suppression of this easily attainable evidence").  Here, the petition acknowledges that the defense was aware of the photographs, and correctly states that they were unsuccessfully sought in discovery.  ECF No. 1 at 128 (citing 1 CT 9-16).[5]  Petitioner appears believes that because the defense could not pay the photographer for its own set of prints (assuming this was the case), the prosecution had a Brady obligation to do so for the defense's benefit.  Id. at 129.  No clearly established U.S. Supreme Court precedent holds that the prosecution must pay for the duplication of evidence for defense use.

In any event, the trial record demonstrates that there was no withholding of evidence.  The issue of the Saldivar photographs was addressed at hearing on motions in limine.  ECF No. 15-4 at 107-112.  It is clear from the transcript of that hearing that defense counsel had long been aware that the evidence in the case included both photographs taken by law enforcement and photographs taken by Mr. Saldivar.  The prosecutor explained to the court that Saldivar was "someone who makes a living going to crime scenes and taking photographs.  They are copyrighted at that time and they are available to be purchased by the D.A.'s office or defense counsel or law enforcement."  Id. at 108.  The D.A.'s office had obtained a set of Saldivar's photographs related to this case, which were marked as copyrighted and accompanied by a letter stating they were not to be reproduced.  The prosecutor then provided defense counsel with a

---

[5]  See ECF No. 15-1 (CT vol. 1) at 20-26.  The discovery motion states that the photographs were referenced in Officer Mudd's report.  Id. at 21.

copy of that cover letter, which included Saldivar's contact and ordering information.  Id. at 108-109.

Defense counsel told the court that the photographs which were marked for use at trial included may that he had not seen before.  Id. at 111.  The prosecutor's records indicated that the Saldivar photographs had been produced to the defense in discovery, notwithstanding the initial representation that they could not be duplicated.  Id. at 110.  Defense counsel disputed production; he also said that he couldn't tell law enforcement photos from Saldivar photos, and that he had paid for significant quantities of discovery.  Id. at 110-111.  The prosecutor agreed to give defense counsel her disk containing all photographic evidence, not just those photos that had been marked for use in evidence.  Id. at 112.  The following week, before the jury was sworn, defense counsel stated that he had reviewed all the photographs.  Id. at 254.  There was no request for a continuance in light of any recently disclosed evidence.  This record establishes beyond dispute that the defense was aware from early in the case that the Saldivar photographs existed, was promptly provided with all information needed to independently obtain copies, and was provided the opportunity to view the photographs prior to commencement of proceedings before the jury.  Accordingly, petitioner cannot establish suppression within the meaning of Brady.

Finally, petitioner's allegation of materiality is entirely conclusory.  There is no factual basis for a conclusion that earlier production of any particular photographs would have changed the outcome of the trial.

For all these reasons, it was entirely reasonable for the state court to conclude that petitioner failed to state a prima facie Brady claim.

V.    Claim Six: Ineffective Assistance of Counsel

A.  Petitioner's Allegations and Pertinent State Court Record

Petitioner alleges that trial counsel violated Sixth Amendment norms in his choice of defense theories.  There were four primary strategies available: (1) casting doubt on petitioner's culpability for causing the traffic accident, by questioning which vehicle crossed the centerline (the "centerline strategy"); (2) casting doubt on petitioner's culpability for causing the fatal injuries, focusing on how the victim's car was impacted by the other two vehicles (the "impact

strategy"); (3) casting doubt on petitioner's level of intoxication (the "intoxication strategy"); and (4) arguing that not all the requirements of "Watson murder" were met (the "elements strategy"). Trial counsel focused exclusively on the intoxication and elements strategies. Had counsel reviewed and investigated the Saldivar photographs discussed in Claim Five, he would have been able to successfully pursue the centerline and impact strategies. ECF No. 1 at 131, 132-133.

Petitioner acknowledges that "pursuing these two strategies would have required an accident and reconstruction expert to develop an alternative theory of the accident to rebut the prosecution's case." Id. at 133. He alleges that he provided funds to hire an expert, but counsel did not do so. Id.

### B.  The Clearly Established Federal Law

To establish a constitutional violation based on ineffective assistance of counsel, a petitioner must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 692, 694 (1984). Prejudice means that the error actually had an adverse effect on the defense. There must be a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Id. at 693-94. The court need not address both prongs of the Strickland test if the petitioner's showing is insufficient as to one prong. Id. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id.

### C.  The State Court's Ruling

Like the Brady claim, petitioner's ineffective assistance claim was denied by the superior court in a written decision before being summarily denied by the California Supreme Court. Accordingly, the superior court decision is the subject of reasonableness review under § 2254(d). See Bonner, 425 F.3d at 1148 n.13.

The superior court ruled as follows:

> With respect to ineffective assistance of counsel, it is the petitioner's burden in a habeas petition to state a prima facie case that he is entitled to relief. (California Rule of Court 4.551(c)(1).) For a claim of ineffective assistance of counsel, there are two important components: "deficient performance of counsel and prejudice to the

18

petitioner." (*In re Cox* (2003) 30 Cal. 4th 974, 1019.) With respect to the first component, deficient performance is defined as representation below an objective standard of reasonableness. (*People v. Ledesma* (1987) 43 Cal.3d 171, 216, 217.) Prejudice is defined as "a reasonable probability that a more favorable outcome would have resulted." (*In re Cox* at 1020.)

Generally, whether to call certain witnesses is a matter of trial tactics for the attorney, unless the decision resulted from an unreasonable failure to investigate. (*People v. Bolin* (1998) 18 Cal.4th 297, 334.) Tactical errors are generally not deemed reversible, and counsel's decision making must be evaluated in the context of the available facts. (*Strickland v. Washington* (1984) 466 U.S. 668, 690.) The court's review of counsel's conduct should be deferential and avoid "the distorting effects of hindsight and to evaluate counsel's conduct from counsel's perspective at the time." (*People v. Dennis* (1998) 17 CaJ.4th 468, 541.) Additionally, this court in reviewing petitioner's IAC claim does not even need to determine whether his trial counsel's performance was deficient before examining the claimed prejudice suffered by the petitioner due to the alleged deficiencies. (*Strickland* at 697.)

In his petition, Mr. Yushchuk offers an alternative interpretation to photographic evidence of the accident scene, essentially offering that those photos could be used to support a claim that he did not cross over the centerline just prior to the accident. His claim is speculative and unsupported by any expert opinion. Additionally, such a claim would be contrary to an independent witness, who testified to seeing a vehicle in petitioner's lane of travel cross over the centerline. It is entirely reasonable for defense counsel, as a matter of trial strategy, to decide which areas to pursue and argue to the jury. Instead of arguing the point, counsel for the petitioner chose to present evidence and argument to minimize the nature of the driving and focus instead on whether or not the elements of the offense have been met.

As summarized by our Court of Appeal, defense counsel argued the

following to the jury:

> "[N]ot everybody who knows drunk driving is dangerous and causes a fatal accident is guilty of murder; this was not an all-or-nothing case and there were several lesser homicide offenses to consider. He invited the jury to consider whether defendant was intoxicated at the time of the crash, based on the missing 10 ounces of vodka that defendant may have drunk either shortly before the collision or to dull his pain after the collision, an dcounsel put more emphasis on the latter possibility. There was no evidence defendant committed any traffic infractions (e.g., weaving, speeding, etc.) other than crossing the centerline on a curve on a narrow road, consistent with the view that he was not intoxicated while driving, but became intoxicated either just before or just after the accident." (Decision of the Court of Appeal, C081739, filed 10/12/18, p. 5.) [Fn: Defense counsel filed a brief during trial to admit evidence relating to the

19

dangerousness of the roadway, and showed a video to the jury of driving on the roadway. The court allowed the defense witness and retired CHP officer Craig Speck to testify as to other reasons, besides being under the influence, he believes people may drive over the double yellow line on a roadway. (See Trial Minutes, 1/25/16; Defense Brief entitled "Prior Driving Errors/Accidents" filed 1/19/16.)

Similarly, petitioner argues that his counsel could have explored evidence to establish that the third vehicle involved in the accident could have caused the fatalities in this case. His claims of certain evidence to support his position - the location of the victim's blood in the vehicle and the failure of the airbag to deploy - is similarly speculative and unsupported by any expert opinion. He claims his counsel was ineffective at cross examining this third party driver on the stand, speculating that a jury might have been able to surmise that he was trying to minimize his culpability. The court observes, however, that the jury acquitted the defendant of counts three and four involving this person, felony driving under the influence causing injury (VC 23153(a)/(b); and instead found him guilty of the lesser misdemeanor offenses. In consideration of the petition and the trial record as referred to above, the petitioner has failed to make a prima facie showing that his counsel rendered ineffective assistance by failing to pursue other trial strategies.

Additionally, the petitioner as failed to establish prejudice in his IAC claim. Specifically, for the crime of Watson murder, the nature of the driving played a minimal role in the outcome, as stated by the trial court at sentencing:

> "So I just want to have a few comments from the Court very briefly, and that was when I read a number of the letters that were written by Mr. Yushchuk's people that know him, and a lot of people referred to them as a bad mistake or accident. But in the Court's mind when I heard the testimony and the evidence, it was more than a bad mistake and more than an accident because the evidence reflected I think clearly that Mr. Yushchuk with his history of alcohol, the number of times he'd been warned about how dangerous it was and that he could hurt or harm someone, and the fact that he had been even told prior to this he could be prosecuted for murder, and the fact even fairly soon before this happened he even took a class where he was informed of the dangers of alcohol, and then on the night this happened, he even made comments to his friend about driving under the influence and knowing the risk, and I'm summarizing, but that they understood they shouldn't be driving due to their impairment, and that came out on the record. In most cases it has be to be brought out by circumstantial evidence. In this case it was directly proved by his own - the testimony of his own friend. And the fact that the defendant after talking about the dangers of driving under the influence to his friend, then drops his friend off, and then consumes ten ounces of vodka, apparently by himself in a vehicle, tells me that he just blatantly disregarded all the consequences, who-cares

20

attitude, and I understand the court cases in this case there wasn't the outrageous driving seen in some, but that fact alone, the evidence, the totality of circumstances made it clear to me that there was sufficient evidence for the jurors to believe that he committed murder by an implied malice. And the testimony at trial, the theory being raised that perhaps he consumed the alcohol after the accident, as far as being the 13th juror was concerned, I totally think that is totally incredible in light of the injuries he received, so in my mind I'm absolutely convinced that he consumed that alcohol at some time prior to the accident after having talked about it, so to me this is more than just a mere accident. It was implied malice as the law has talked about." (Reporter's Transcript, Judgment and Sentence, March 20, 2016, pp. 16-17.)

By the trial court's comments, the nature of the driving played a minimal role in the finding of implied malice. As to the issue of causation related to the petitioner's claim that the third party impact could have caused the fatality, he overlooks the law of causation as instructed to the jury - that there can be more than one cause of death and that an act causes death if it is a substantial (not the only) cause. (See CALCRIM 590, as given). In light of the totality of the evidence presented at trial and the speculation that the pursuit of "Centerline" and "Impact" strategies would have even made a difference, the defendant has failed to establish that he was prejudiced - i.e. that there is a reasonable probability that but for counsel's failings, he would have obtained a more favorable result. The phrase "reasonable probability" is one that is enough to undermine confidence in the outcome. (*Dennis* at 541, citing *Strickland* (*supra*) at 694.) Here, his claims are insufficient to undermine the confidence in the outcome.

ECF No. 15-16 at 2-7.

### D.  Objective Reasonableness Under § 2254(d)

The superior court correctly articulated the standards required by Strickland, and applied them perfectly reasonably.  As to the performance prong, the court was required to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy."  Strickland, 466 U.S. at 694-95 (citation omitted).  As the superior court observed, the "centerline" strategy would have been contrary to eyewitness testimony that petitioner had crossed the line, and the alleged strength of both the "centerline" and "impact" strategies is entirely speculative.  In any event, the state court was required to defer to counsel's strategic choice of defense theory.  See Richter, 562 U.S. at 106-110 (habeas relief unavailable on claim that counsel was ineffective in choosing among

1  reasonable alternative strategies, even without full investigation of options).

2      Here petitioner has presented no factual basis for a conclusion that counsel's choice of a
3  defense fell outside the wide range of reasonable performance.  In any DUI case, challenging the
4  government's proof of blood alcohol level and degree of defendant's intoxication is essential to
5  the defense.  And in any murder prosecution, the defendant's *mens rea* is the key.  Pursuing the
6  theory that petitioner had not acted with the state of mind required by Watson cannot be
7  considered deficient performance; it was probably the best shot petitioner had.  In contrast, the
8  "centerline" and "impact" strategies could have been rejected by reasonable counsel as unlikely to
9  prevail.  The defense knew that an eyewitness would testify petitioner had crossed the centerline,
10 and that the prosecution would be introducing expert testimony that the collision with petitioner's
11 car is what had killed the victim.  Counsel may reasonably have decided that creating a battle of
12 experts on the impact issue would be a waste of resources and unlikely to sway the jury.  See
13 Richter, 562 U.S. at 108-109.  Counsel also could have reasonably decided that the "impact
14 theory" was likely to backfire, because jurors might be offended by an attempt to shift
15 responsibility for the victim's death onto the driver who crashed into the hazard created by
16 petitioner's initial collision with the victim's vehicle.

17     On the prejudice prong, there is a complete absence of specific factual allegations
18 establishing a reasonable likelihood of a different result had counsel pursued the strategy
19 petitioner urges.  Petitioner acknowledges that the "centerline" and "impact" defenses would have
20 required accident reconstruction experts, but no expert reports are attached to the petition and
21 there is no specific proffer of the exculpatory evidence that such experts could have provided.
22 Accordingly, the claim necessarily fails.  See Wildman v. Johnson, 261 F.3d 832, 839 (9th Cir.
23 2001) (no ineffective assistance of counsel for failing to retain expert where petitioner did not
24 offer evidence that expert would have testified); Grisby v. Blodgett, 130 F.3d 365, 373 (9th Cir.
25 1997) (speculation about unpresented evidence, including expert testimony, is not enough to
26 establish prejudice from ineffective assistance); Hendricks v. Calderon, 70 F.3d 1032, 1042
27 (1995) ("Absent an account of what beneficial evidence investigation into any of these issues
28 would have turned up, [petitioner] cannot meet the prejudice prong of the Strickland test.").

1    Accordingly, the superior court's conclusions as to both performance and prejudice were

2    not objectively unreasonable.  In light of the double dose of deference that applies under

3    Strickland and § 2254(d), see Knowles v. Mirzayance, 556 U.S. 111, 123 (2009), relief is

4    unavailable on this claim.

5        VI.    Claim Six: Destruction of Evidence

6            A.   Petitioner's Allegations and Pertinent State Court Record

7    Petitioner alleges that his due process rights were violated by the state's destruction of the

8    victim's van.  ECF No. 1 at 135.  According to the petition, the victim's fatal injuries were caused

9    not by the collision with petitioner but by the subsequent impact from Michael S.'s pickup truck.

10   The state released the victim's vehicle for salvage, preventing the defense from using it for an

11   impact strategy defense.  Id. at 137.

12           B.   The Clearly Established Federal Law

13   Due process "requires the State to disclose to criminal defendants favorable evidence that

14   is material either to guilt or to punishment."  California v. Trombetta, 467 U.S. 479, 480 (1984).

15   The duty to preserve evidence is "limited to evidence that might be expected to play a significant

16   role in the suspect's defense."  Id. at 488.  This means evidence with "exculpatory value that was

17   apparent before the evidence was destroyed" and "of such a nature that the defendant would be

18   unable to obtain comparable evidence by other reasonably available means."  Id. at 489.

19   "[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve

20   potentially useful evidence does not constitute a denial of due process."  Arizona v. Youngblood,

21   488 U.S. 51, 58 (1988).

22           C.   The State Court's Ruling

23   This claim was summarily denied by the California Supreme Court.

24           D.   Objective Reasonableness Under § 2254(d)

25   This claim could reasonably have been denied for lack of a prima facie case, because the

26   facts do not show that the victim's van was anything more than potentially useful.  See Cullen v.

27   Pinholster, 563 U.S. 170, 188 n.12 (2011) (California summary denial represents determination

28   that petitioner failed to state a prima facie case); Nunes v. Mueller, 350 F.3d 1045, 1054-55 (9th

1    Cir. 2003) (where state court issues summary denial, the absence of a prima facie case is the

2    determination that must be reviewed for reasonableness under § 2254(d)), cert. denied, 543 U.S.

3    1038 (2004).

4         Petitioner has articulated a reason that the defense might have wished to directly examine

5    the vehicle as part of its investigation into potential defenses, which establishes potential

6    usefulness, but he has alleged no facts demonstrating exculpatory value that was apparent before

7    the evidence was released for salvage.  The assertion of exculpatory value is entirely conclusory,

8    and thus insufficient to state a claim.  Neither has petitioner presented facts showing that the lost

9    evidence was of such a nature that the defense was unable to obtain comparable evidence by other

10   reasonably available means.  Damage to the vehicles was documented photographically, and there

11   has been no showing that the photographic evidence was inadequate.  Because the allegations

12   establish no more than potential usefulness of the evidence, and there are no facts indicating bad

13   faith on the part of police, petitioner has failed to state a prima facie claim.  See Youngblood, 488

14   U.S. at 58.  Summary denial was therefore objectively reasonable, and federal habeas relief is

15   unavailable.

16                                    CONCLUSION

17        For all the reasons explained above, the state courts' denial of petitioner's claims was not

18   objectively unreasonable within the meaning of 28 U.S.C. § 2254(d).  Accordingly, IT IS

19   HEREBY RECOMMENDED that the petition for writ of habeas corpus be denied.

20        These findings and recommendations are submitted to the United States District Judge

21   assigned to the case, pursuant to the provisions of 28 U.S.C. §636(b)(l).  Within twenty-one days

22   after being served with these findings and recommendations, any party may file written

23   objections with the court and serve a copy on all parties.  Such a document should be captioned

24   "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections,

25   he shall also address whether a certificate of appealability should issue and, if so, why and as to

26   which issues.  See 28 U.S.C. § 2253(c)(2).  Any reply to the objections shall be served and filed

27   within fourteen days after service of the objections.  The parties are advised that failure to file

28   ////

                                         24

objections within the specified time may waive the right to appeal the District Court's order.

<u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 21, 2024

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE